# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____
                                    )
Shonnett Sisco,                     )
                                    )
      Plaintiff,             )
                                    )
      v.                     )       Civil Action No. 10-10513-DJC
                                    )
DLA Piper LLP, Bruce Falby,         )
Susan Scannell and                  )
Lawrence Uchill,                    )
                                    )
      Defendants.            )
_____)

## MEMORANDUM AND ORDER

CASPER, J.                                         June 15, 2011

## I. Introduction

Plaintiff Shonnett Sisco ("Sisco") accuses her former employer, DLA Piper, and three of its employees, Lawrence Uchill, Susan Scannell and Bruce Falby (collectively, "the Defendants"), of sexual harassment, creating a hostile work environment, racial discrimination, and retaliation in violation of both federal and state law. The Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Sisco has failed to state a claim upon which relief can be granted. For the reasons discussed below, the Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.

## II. Burden of Proof and Standard of Review

Whether a complaint should survive a motion to dismiss depends upon whether the pleading satisfies the "plausibility" standard. Ashcroft v. Iqbal, - - - U.S. - - - , 129 S.Ct. 1937 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007). The First Circuit has recently addressed the principles

a district court should follow when considering a motion to dismiss in the wake of <u>Iqbal</u> and <u>Twombly</u>.  <u>Ocasio-Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 8-9 (1st Cir. 2011).  As <u>Ocasio-Hernández</u> makes clear, dismissal of a complaint pursuant to Rule 12(b)(6) is inappropriate if the complaint satisfies the two-pronged requirement in Rule 8(a)(2) of "a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Id.</u> at 8 (citing Fed. R. Civ. P. 8(a)(2)).  As to the first prong, a "short and plain" statement "needs only enough detail to provide a defendant with 'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).  However, in order to satisfy the second prong of showing an entitlement to relief, "a complaint must contain enough factual material 'to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'"  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S. Ct. at 1949).  "In short, an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim."  <u>Id.</u>

"In resolving a motion to dismiss, a court should employ a two-step approach."  <u>Ocasio-Hernández</u>, 640 F.3d at 9.  "It should begin by identifying and disregarding statements in the complaint that merely offer 'legal conclusion[s] couched as . . . fact[]' or '[t]hreadbare recitals of the elements of a cause of action.'"  <u>Id.</u> (quoting <u>Iqbal</u>, 129 S.Ct. at 1949).  "A plaintiff is not entitled to 'proceed perforce' by virtue of allegations that merely parrot the elements of the cause of action."  <u>Id.</u>  On the other hand, "[n]on-conclusory factual allegations in the complaint must be treated as true, even if the allegations seem incredible."  <u>Id.</u>  "If that factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged,' the claim has facial plausibility." <u>Id.</u> (quoting <u>Iqbal</u>, 129 S.Ct. at 1949). "The make-or-break standard . . . is that the combined allegations, taken as true, must state a plausible, not a merely conceivable, case for relief." <u>Id.</u> (quoting <u>Sepúlveda-Villarini v. Dep't. of Educ. of P.R.</u>, 628 F.3d 25, 29 (1st Cir. 2010) (Souter, J.)). "Although evaluating the plausibility of a legal claim requires the reviewing court to draw on its judicial experience and common sense, the court may not disregard properly pled factual allegations, even if it strikes a savvy judge that actual proof of those facts is improbable." <u>Id.</u> (citations and quotations omitted). "Nor may a court attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if a recovery is very remote and unlikely.'" <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 556). "The relevant inquiry focuses on the reasonableness of the inference of liability that the plaintiff is asking the court to draw from the facts alleged in the complaint." <u>Id.</u>

In the employment discrimination context, it is not necessary for a plaintiff to plead facts supporting each element of a claim, provided that whatever facts are pled allow the Court to plausibly infer liability. As the Supreme Court has stated on multiple occasions, "a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination." <u>Twombly</u>, 550 U.S. at 547 (quoting <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 (2002)) <u>Twombly</u> does "not requir[e] heightened fact pleading of specifics [regarding employment discrimination], but only enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 547. Accordingly, as the Defendants concede, "dismissal . . . at this early stage" is "rare . . . in employment discrimination cases." Defs. Memo. at 1.

## III.  Factual Allegations

The following facts are alleged in the complaint and are taken as true for the purposes of this motion. Purportedly factual allegations in the complaint that are mere legal conclusions couched as fact or threadbare recitals of the elements of a legal cause of action have been disregarded by the Court and are not included in the following factual summary. Ocasio-Hernández, 640 F.3d at 9.

DLA Piper is a law firm with offices in Boston. In 2005, DLA Piper hired Sisco, an African-American woman, as a floating special assignment secretary ("floater"). In July 2006, Sisco was promoted to the position of legal secretary. She was assigned to work for two partners at the firm, including Defendant Lawrence Uchill ("Uchill").

## A. Uchill's Alleged Harassment of Sisco

Beginning in January 2008, Uchill began standing over Sisco while she was sitting at her desk and, in this hovering position, he stared at her chest. In February 2008, Uchill told Sisco that he wanted to take her out to lunch to find out what was on her mind and instructed Sisco to make arrangements for the two of them to have lunch at a restaurant of her choice. Sisco had never indicated to Uchill that anything out of the ordinary was on her mind. After Sisco scheduled the lunch, Uchill began frequently winking and smiling suggestively at her. Uchill had not engaged in this behavior with Sisco previously. Sisco cancelled the lunch. He became nervous and asked Sisco if she had been offended by his asking her to lunch. The complaint does not indicate Sisco's response. Uchill continued winking at Sisco even after she cancelled the lunch.

On April 1, 2008, Uchill gave Sisco a set of sexually loaded lyrics that Sisco found offensive and instructed Sisco to type them.[1] At some point in April 2008, Uchill again stood over Sisco

---

[1]The lyrics Sisco was asked to type included the following statements:
- "Even though it's cold outside the staff in here is hot."
- "Rosie, Lulu, Frenchie, Texas, Fritzie . . . Und Helga. Each and every one a virgin! You

staring at her chest. Sisco turned to shield herself. Uchill moved closer to Sisco. Uchill reached

from behind Sisco, crossing her chest with his hand, and "dr[ew] an imaginary line" on a paper in

front of her. Compl. at ¶ 33. In so doing, Uchill "made offensive physical contact with Sisco and

touched her fingers." Id.[2] This course of conduct was repeated another time by Uchill, although the

Complaint does not specify when.

### B.    Sisco Complains about Alleged Sexual Harassment

On April 10, 2008, Sisco contacted DLA Piper's human resources office ("HR") by phone

and e-mail and complained not just about Uchill's, but Scannell's, conduct as well.[3] She explained

to HR that she found Uchill's conduct offensive, that she felt sexually harassed, and that she felt she

was experiencing a continuing hostile work environment. Sisco told HR that Audrey Nydon-Rice

was a witness to some of the events that formed the basis of Sisco's complaint. Sisco asked to be

removed from Uchill's supervision and assigned to a different attorney as a legal secretary. HR

initially apologized to Sisco and acknowledged that the lyrics Uchill gave her to type could be

offensive to some people. HR Director Elaine Charmichael and HR Generalist Grace Petrola met

with Sisco in response to her complaint. Charmichael and Petrola also met with Uchill. Uchill was

not reprimanded, and Petrola instructed Uchill not to apologize to Sisco. HR neither contacted

Nydon-Rice to corroborate Sisco's complaint nor investigated Sisco's claims against Scannell.

---

don't believe me? Well, don't take my word for it. Go ahead - try Helga!"
- "Helga is the baby. I'm just like a father to her. So when she's bad, I spank her. And she's very, very, very, very, very bad."

[2] It is not clear from the complaint whether the alleged "offensive physical contact" was Uchill's touching of Sisco's fingers or whether the "offensive physical contact" and the touching of her fingers were separate wrongful acts.

[3] On March 25, 2008, Defendant Susan Scannell, another DLA Piper secretary, left on Sisco's desk an e-mail about a play entitled "7 Blowjobs."

## C.  Sisco's Reassignment and Scannell's Alleged Harassment and Retaliatory Conduct

At some point between April 10 and April 14, 2008, Sisco was reassigned, over her objection, to a position as a floater, the same position she had held when she first joined the firm in 2005.  This reassignment reduced her eligibility for the higher pay and bonuses received by legal secretaries.  After Sisco was reassigned, Scannell took her place working for Uchill.  Scannell tried several times to get Sisco to return to her former work area and into proximity with Uchill, under what Sisco describes as the "pretense" of asking Sisco for help with Scannell's work for Uchill.  Compl. at ¶ 57.  Sisco refused and instead gave Scannell all the information necessary so Scannell could perform the relevant tasks herself.  Scannell became angry with Sisco, saying Sisco was making things difficult and scolding Sisco for refusing to return to Uchill's work area.  On April 14, 2008, Sisco reported Scannell's conduct to HR, asserting that the conduct was retaliation for Sisco's sexual harassment complaint against Uchill and Scannell.  HR did not investigate or take any other action.

On April 15, 2008, Scannell falsely accused Sisco of stealing a box of Scannell's personal belongings, asserting, over Sisco's repeated protestations, that Scannell had seen the box near Sisco's feet.  Scannell repeated the accusation to another DLA Piper employee.  Later that day, Sisco tearfully complained to Petrola and Charmichael in HR about Scannell's conduct, which Sisco described as retaliatory and harassing.  They told Sisco they would contact her later to begin an investigation of her claims of sexual harassment and retaliation.  Neither Charmichael nor Petrola nor any other HR representative ever contacted Sisco to begin this investigation.

In June 2008, Sisco received her performance review for the year running from May 1, 2007 until April 30, 2008.  Although Sisco had worked as a legal secretary, not a floater, for forty-nine

of the fifty-two weeks in the review period, the review stated that the position being reviewed as "Special Assignment Secretary" (the formal title for floaters). The substance of the review was mostly positive - the overall rating was "highly skilled," as were most of the individual ratings in the review - but HR staffer Petrola included some negative comments that were, according to Sisco, untrue and based on events that had never occurred.[4] As a result of the review, Sisco received a merit increase to her salary of 4.25%, which is lower than the increase she would have received as a legal secretary. When she inquired about the lower percentage increase, a superior told her, falsely, that this was the highest percentage increase available for any secretary.

### D. Sisco, Now a Floater, Is Not Considered for a Legal Secretary Opening for Defendant Falby

In July 2008, Petrola informed Sisco that Sisco could not take her two-week vacation from August 13, 2008 until August 27, 2008 despite that it had been previously approved. Petrola rescheduled Sisco's vacation for the end of August 2008 through the beginning of September 2008.

While Sisco was away from the office on vacation, DLA Piper moved to fill a vacant legal secretary position reporting to Defendant Bruce Falby, a partner at the firm. Sisco was neither informed of this vacancy nor allowed to compete for it. Upon returning from her vacation, she discovered that the position had been given to Jane Borr, a fellow floater. Sisco, unlike Borr, had previous experience working as a legal secretary. Sisco had positive performance evaluations from her time as a legal secretary. Sisco had more seniority than Borr. Sisco is black and Borr is white. Sisco had complained about sexual harassment and retaliation to HR and Borr had not.

On October 8, 2008, Sisco met with Charmichael to discuss some information Sisco had

---

[4]The complaint does not specify the content of the negative comments.

missed due to sick leave.[5]  Three times during the half-hour meeting, Charmichael stated that there would be changes made to the DLA Piper staff before the end of the year.  Sisco understood these comments to mean that Sisco's job was in danger as a result of her complaints regarding sexual harassment and retaliation.

Sometime in September or October 2008, Sisco discovered that, beginning in June 2008, HR and Falby had offered the position of Falby's legal secretary to at least three other internal candidates - one legal secretary, one night secretary, and one secretary in the Litigation group - without first posting the position publicly.  All three candidates had less experience than Sisco working as a legal secretary, all three candidates were Caucasian, and none of the three candidates had complained to HR about sexual harassment or retaliation.

In October 2008, Sisco inquired about the process that led to Borr receiving the position of Falby's legal secretary.  On October 22, 2008, DLA Piper representative Margaret Keefe informed Sisco by e-mail that the position "was not posted, and it was not posted by design," that "assignments will be changed by the discretion of management," and that the decision to fill the position was made by Petrola in consultation with Charmichael.  Later that day, Sisco responded to Keefe by e-mail, alleging that Sisco had not been considered for the position as Falby's legal secretary at least in part on the basis of Sisco's race.  This allegation of racial discrimination was never investigated.

### E.      Defendant DLA Piper Allegedly Retaliates Against Sisco

---

[5]The complaint states that Sisco took off nearly 4½ days from work due to the hostile work environment, sexual harassment and the retaliation she experienced at DLA Piper.  The complaint does not state the dates when Sisco took time off work, or whether this time off precipitated the October 8 meeting with Charmichael.

In the wake of Sisco's complaints about her treatment, she alleges that, not only was she reassigned as a floater, but also that Uchill continued to act inappropriately toward her. She claims that in early October 2008, Uchill "frowned at" Sisco and gestured at her with a "downward smack that was noticed by all and was directed at Sisco." Compl. at ¶ 82. On October 20, 2008, he subjected her to "discourteous facial expressions and body language." Compl. at ¶ 84.

She also alleges that DLA Piper took further retaliatory action against her after she filed formal charges on November 5, 2008 with the Massachusetts Commission Against Discrimination ("MCAD") and the federal Equal Employment Opportunity Commission ("EEOC") alleging hostile work environment and retaliation. On December 2, 2008, DLA Piper, Uchill and Scannell received a copy of Sisco's complaint from the MCAD. They submitted their response on January 7, 2009. On February 9, 2009, Sisco submitted her rebuttal via her attorneys to the MCAD and sent copies to DLA Piper, Uchill and Scannell via certified mail.

On February 12, 2009, three days after Sisco filed her response to the Defendants' response to her MCAD claim, DLA Piper fired Sisco. DLA Piper also fired a few part-time employees, including the only other floater. At the time of her termination, Sisco was the only African-American legal secretary or floater in the entire DLA Piper Boston office. All other legal secretaries, including Jane Borr, kept their positions.

## IV. Procedural History

After filing her initial charge with the MCAD and the EEOC on November 5, 2008 alleging sexual harassment, discrimination, and retaliation, she filed additional charges with the MCAD and the EEOC on February 23, 2009 and April 22, 2009. On December 2, 2009, the MCAD dismissed

Sisco's charges without holding a hearing. On February 11, 2010, the EEOC issued right-to-sue letters to Sisco. Sisco filed the instant complaint in federal court on March 26, 2010.

Defendants have now moved to dismiss the case pursuant to Fed. R. Civ. P. 12(b)(6).

## V. Discussion

### A. Sexual Harassment and Hostile Work Environment Claims under Title VII (First Cause of Action)

The elements a plaintiff must establish to succeed on a Title VII hostile work environment claim against his or her employer are: (1) that she is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established. Agusty-Reyes v. Dep't of Educ. of P.R., 601 F.3d 45, 53 n.6 (1st Cir. 2010).

Two of these elements merit additional explanation. The fourth element, severity or pervasiveness sufficient to alter the conditions of employment, "requires an assessment of the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" Valentín-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 94 (1st Cir. 2006) (quoting Harris v. Forklift Sys., 510 U.S. 17, 23 (1993)). "Although offhand remarks and isolated incidents are not enough, '[e]vidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment.'" Id. (quoting O'Rourke v. City of Providence, 235 F.3d 713, 729 (1st

Cir. 2001)).

The sixth element, employer liability, is present when a supervisor's harassment of an employee results in a "tangible employment action against the employee," making the employer vicariously liable for the "actionable hostile environment created by [the] supervisor." <u>Agusty-Reyes</u>, 601 F.3d at 53 (quoting <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742, 765 (1998)). Tangible employment actions include "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." <u>Ellerth</u>, 524 U.S. at 761. "[T]he harassing supervisor must be the one who orders the tangible employment action or, at the very least, must be otherwise substantially responsible for the action." <u>Lee-Crespo v. Schering-Plough Del Caribe Inc.</u>, 354 F.3d 34, 44 (1st Cir. 2003).

### 1.      Claim against DLA Piper

The facts alleged in Sisco's complaint are sufficient to withstand the Defendant's motion to dismiss the hostile work environment claim against Defendant DLA Piper. Sisco is a member of a protected class by virtue of her sex. 42 U.S.C. § 2000e-2(a)(1). Sisco clearly did not welcome the treatment to which she was allegedly subjected. The alleged treatment includes sexual harassment and the establishment of a hostile work environment, each of which is discrimination on the basis of sex. <u>Meritor Sav. Bank v. Vinson</u>, 477 U.S. 57, 65-67 (1986). Although Defendants argue that the facts alleged by Sisco show only mistreatment that is "isolated in time and character," Defs. Memo. at 7, the Court finds that Uchill and Scannell's allegedly hostile acts towards Sisco are precisely the type of recurring "sexual remarks, innuendoes, ridicule, and intimidation" that is "sufficient to support a jury verdict for a hostile work environment." <u>Valentín-Almeyda</u>, 447 F.3d at 94 (quoting <u>O'Rourke</u>, 235 F.3d at 729). Contrary to the Defendants' position that Sisco has

failed to allege that her alleged mistreatment materially altered her work performance, the Court finds that the totality of the facts alleged in the complaint could be plausibly read as conduct so frequent, severe, physically threatening and humiliating as to unreasonably interfere with Sisco's work. The plausibilty of this inference is enhanced by the factual allegations that Sisco sought to transfer to a position away from Uchill and that she was excoriated by Scannell for refusing to return to Uchill's work area when instructed to do so. The alleged conduct was both subjectively offensive to Sisco and could plausibly be seen as objectively offensive by a reasonable person in Sisco's shoes. The complaint alleges that, as a result of her mistreatment, Sisco was demoted from the position of legal secretary to the position of floater, which caused a significant decrease in the benefits for which Sisco was eligible. Accordingly, Sisco's complaint states a plausible hostile work environment claim under Title VII.

### 2. Claims against Uchill and Scannell

"There is no individual liability under Title VII." <u>Fantini v. Salem State Coll.</u>, 557 F.3d 22, 31 (1st Cir. 2009). Accordingly, relief cannot be granted upon Sisco's Title VII claims against Uchill and Scannell.

### B. Sexual Harassment and Hostile Work Environment Claims under Chapter 151B (Second Cause of Action)

The definition of "sexual harassment" in Chapter 151B includes "sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature when . . . such advances, requests or conduct have the purpose or effect of unreasonably interfering with an individual's work performance by creating an intimidating, hostile, humiliating or sexually offensive work environment." Mass. G. L. c. 151B, § 1(18). Accordingly, to succeed on a Chapter 151B hostile work environment claim, a plaintiff must show "that she worked in a sexually hostile environment

12

that unreasonably interfered with her work performance." Muzzy v. Cahillane Motors, Inc., 434 Mass. 409, 411 (2001). "To constitute actionable harassment, the claimed conduct must be both objectively and subjectively offensive." Id. at 412 n.2 (citations omitted). To show that conduct was "objectively offensive," a plaintiff "need[s] to establish that the conduct alleged was sufficiently severe and pervasive to interfere with a reasonable person's work performance," as "considered from the 'view of a reasonable person in the plaintiff's position.'" Id. at 411-12 (quoting Ramsdell v. W. Mass. Bus Lines, Inc., 415 Mass 673, 677-78 n.3 (1993)). Unlike Title VII, Chapter 151B explicitly imposes liability on individuals. Mass. G. L. c. 151B, § 4(4A) (making it unlawful "[f]or any person to intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter") (emphasis added) and § 4(5) (making it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this chapter") (emphasis added).

### 1.    Claim against DLA Piper

The facts alleged in Sisco's complaint that give rise to a plausible Title VII claim against DLA Piper, as discussed above, are equally sufficient to give rise to a plausible Chapter 151B claim against the firm.


### 2.    Claim against Uchill

The factual allegations in the complaint, included but not limited to the allegations that Uchill repeatedly leered at Sisco, repeatedly touched her, instructed her to organize a private lunch for the two of them, acted suggestively once the lunch was scheduled, and acted in a hostile manner towards Sisco after his alleged advances were rebuffed, coupled with the fact that Sisco sought to

transfer to a position away from Uchill, support a plausible inference that Uchill's conduct was "sufficiently severe and pervasive to interfere with a reasonable person's work performance." Muzzy, 434 Mass at 411. Accordingly, the allegations in the complaint are sufficient to give rise to a plausible Chapter 151B claim against Uchill.

### 3. Claim against Scannell

Allegations that Scannell left a sexually suggestive e-mail on Sisco's desk, repeatedly tried to lure Sisco back into Uchill's working area, scolded Sisco for refusing to do so, and then repeatedly spread false accusations about Sisco around the office in a manner sufficiently intimidating to drive Sisco to tears, taken in their totality, support a plausible inference that Scannell's conduct was "sufficiently severe and pervasive to interfere with a reasonable person's work performance." Muzzy, 434 Mass at 411. It is plausible to infer from the factual allegations in the complaint that Scannell, as Sisco's replacement as Uchill's legal secretary, was aware of the allegedly hostile work environment Sisco suffered when in proximity to Uchill. Accordingly, the allegations in the complaint are sufficient to give rise to a plausible Chapter 151B claim against Scannell, at least to the extent that the chapter prohibits "intimidation" and "coercion" in connection with sexual harassment. Mass. G. L. c. 151B, §§ 4(4A), (5).

### C. Retaliation Claims (Related to Sexual Harassment) under Title VII (Third Cause of Action)

Under Title VII's anti-retaliation provisions, a plaintiff must plead a prima facie case consisting of three elements: (1) "that the plaintiff engaged in an activity that is protected by the statute"; (2) "that the plaintiff suffered an adverse employment action"; and (3) "a causal link between the protected activity and the adverse employment action." Rivera-Colón v. Mills, 635

F.3d 9, 12 (1st Cir. 2011).

### 1. Against DLA Piper

The complaint alleges that Sisco complained to HR about sexual harassment and a hostile work environment and that she was demoted within a matter of days. It further alleges that after she complained to HR, DLA Piper prevented Sisco from applying for a promotion to position of Falby's legal secretary while simultaneously actively soliciting lesser-qualified candidates for the position. The complaint also alleges that Sisco was fired soon after filing a complaint with the MCAD. This is more than sufficient to establish a plausible Title VII retaliation claim against DLA Piper.

### D. Retaliation Claims (Related to Sexual Harassment) under Chapter 151B (Fourth Cause of Action)

Under Chapter 151B, "[i]n the absence of direct evidence of a retaliatory motive, to make out a prima facie case of retaliation, the plaintiff must show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." Psy-Ed Corp. v. Klein, 459 Mass. 697, 707 (2011) (quotations and citations omitted).

### 1. Claim against DLA Piper

The facts alleged in Sisco's complaint that give rise to a plausible Title VII retaliation claim against DLA Piper, as discussed above, are equally sufficient to give rise to a plausible Chapter 151B retaliation claim against the firm.

### E. Aiding and Abetting Retaliation Claims (Related to Sexual Harassment) under Chapter 151B (Fourth Cause of Action)

Claims under Chapter 151B are "derivative" of underlying discrimination claims, so there can be no liability for aiding and abetting discrimination absent a meritorious underlying claim of

discrimination.  <u>Abramian v. President & Fellows of Harvard Coll.</u>, 432 Mass. 107, 122 (2000).  In

addition, in order to prevail on a claim for aiding and abetting under Chapter 151B, a complainant

must demonstrate (1) a "wholly individual and distinct wrong" that "was committed by the proposed

or named individual respondent(s)," which "must be separate and distinct from the claim in main,"

and (2) that the "aider or abetter shared an intent to discriminate not unlike that of the alleged

principal offender, and that the aider or abetter knew of his or her supporting role in an enterprise

designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B."  <u>Harmon

v. Malden Hosp.</u>, 19 Mass. Discrim. L. Rep. 157, 158 (Mass. Comm'n Against Discrimination 1997)

(Single Comm'r); <u>see also</u> <u>Planned Parenthood League of Mass., Inc. v. Blake</u>, 417 Mass. 467, 481

(1994) (holding, in a different context, that "any violator of the prohibition against aiding or abetting

in [a court injunction (as opposed to Chapter 151B)] must share the mental state of the principal

violator"); <u>Beaupre v. Cliff Smith & Assocs.</u>, 50 Mass. App. Ct. 480, 495 n.23 (Mass. App. Ct.

2000) (holding that defendant must "be found to have had the requisite intent to discriminate in

order to be liable for aiding and abetting" under Chapter 151B).

        **1.**      **Claim against Uchill**

     The complaint alleges that HR met with Uchill after Sisco complained about his treatment

of her.  It further alleges that after this meeting, Uchill gestured at her in a hostile manner that was

noticed by other employees and was discourteous to her.  More importantly, it alleges that Scannell,

who became Uchill's legal secretary after Sisco was demoted to the position of floater secretary,

aggressively encouraged Sisco to return to Uchill's work area and subjected her to repeated abuse

when she refused.  This conduct is separate and distinct from the claim that DLA Piper retaliated

against Sisco by demoting and then firing her.  The allegations are sufficient to plausibly permit an

inference that Uchill shared DLA Piper's intent to retaliate against Sisco for complaining about Uchill's allegedly harassing conduct and about Sisco's hostile work environment more generally. Accordingly, the facts alleged in Sisco's complaint give rise to a plausible Chapter 151B retaliation claim against Uchill.

### 2. Claim against Scannell

Although the complaint does not allege that HR met with Scannell, it does allege that HR met with her supervisor and that Sisco made repeated complaints to HR specifically about Scannell. It further alleges that after Sisco complained about Uchill, Scannell scolded Sisco for refusing to go near Uchill's work area, and that after Sisco complained about Scannell, Scannell spread false accusations about Sisco around the office sufficient to drive Sisco to tears. These courses of conduct are separate and distinct from the claim that DLA Piper retaliated against Sisco by demoting and then firing her. The allegations are sufficient to plausibly permit an inference that Scannell shared DLA Piper's intent to retaliate against Sisco for complaining about Uchill and Scannell's allegedly harassing and retaliatory conduct. Accordingly, the facts alleged in Sisco's complaint give rise to a plausible Chapter 151B retaliation claim against Scannell.

### F. Race Discrimination Claim under Title VII (Fifth Cause of Action)

"Under the burden shifting analysis applicable to both the federal [Title VII] and state [Chapter 151B] statutory regimes, [a] [p]laintiff must first establish a prima facie case of employment discrimination by demonstrating that (1) [s]he is a protected class member, (2) [s]he performed up to [the] [d]efendant's legitimate job expectations, and (3) [s]he suffered an adverse job action." Allder v. Daniel O'Connell's Sons, 20 F.Supp.2d 210, 215 (D. Mass. 1998) (citing Kale

v. Combined Ins. Co. of Am., 861 F.2d 746, 760 (1st Cir. 1988)). "This initial burden is not an onerous one." Benoit v. Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003). "When the plaintiff makes a prima facie case, an inference arises" that the protected class characteristic "was a determining factor." Kale, 861 F.2d at 759-60.

### 1.    Claim against DLA Piper

The complaint clearly states that Sisco is African-American, and that despite excellent job performance she was demoted and then fired. She also explicitly alleges that she was passed over for a specific promotion to a job position that was repeatedly offered to less-qualified white candidates. These allegations are sufficient to state a plausible Title VII claim for race discrimination.

### G.    Retaliation Claim (Related to Race Discrimination) under Title VII (Fifth Cause of Action)

Again, under Title VII's anti-retaliation provisions, a plaintiff must plead a prima facie case consisting of three elements: (1) "that the plaintiff engaged in an activity that is protected by the statute"; (2) "that the plaintiff suffered an adverse employment action"; and (3) "a causal link between the protected activity and the adverse employment action." Rivera-Colón, 635 F.3d at 12.

### 1.    Claim against DLA Piper

The complaint also alleges that Sisco was fired soon after telling HR that she thought she was passed over for the position of Falby's legal secretary at least in part on the basis of her race and subsequently filing a complaint to that effect with the MCAD. This is more than sufficient to permit a causal inference and thus to establish a plausible Title VII retaliation claim against DLA Piper.

### H.    Race Discrimination Claims under Chapter 151B (Sixth Cause of Action)

Again, "[u]nder the burden shifting analysis applicable to both the federal [Title VII] and

state [Chapter 151B] statutory regimes, [a] [p]laintiff must first establish a prima facie case of employment discrimination by demonstrating that (1) [s]he is a protected class member, (2) [s]he performed up to [the] [d]efendant's legitimate job expectations, and (3) [s]he suffered an adverse job action." Allder, 20 F.Supp.2d at 215 (citing Wheelock Coll. v. Mass. Comm'n Against Discrimination, 371 Mass. 130, 137-38 (1976)). "This initial burden is not an onerous one." Benoit, 331 F.3d at 173.

### 1. Claim against DLA Piper

The facts alleged in Sisco's complaint that give rise to a plausible Title VII race discrimination claim against DLA Piper, as discussed above, are equally sufficient to give rise to a plausible Chapter 151B race discrimination claim against the firm.

### 2. Claim against Falby

The complaint alleges that when white candidates less qualified than Sisco were approached about the possibility of working as Falby's legal secretary, the approach was made not only by HR or by DLA Piper generally but also by Falby himself. Again, Chapter 151B explicitly imposes liability on individuals. Mass. G. L. c. 151B, § 4(4A). At least at this juncture, upon review of the complaint under the plausibility standard, the Chapter 151B claim against Falby may stand.

### I. Retaliation Claim (Related to Race Discrimination) under Chapter 151B (Sixth Cause of Action)

Again, under 151B, "[i]n the absence of direct evidence of a retaliatory motive, to make out a prima facie case of retaliation, the plaintiff must show that he engaged in protected conduct, that he suffered some adverse action, and that a causal connection existed between the protected conduct and the adverse action." Psy-Ed Corp, 459 Mass. at 707(quotations and citations omitted).

### 1. Claim against DLA Piper

The facts alleged in Sisco's complaint that give rise to a plausible Title VII claim against DLA Piper, as discussed above, are equally sufficient to give rise to a plausible Chapter 151B claim against the firm.

### 2. Claim against Falby

According to the allegations in the complaint, the first time Sisco engaged in protected conduct vis-a-vis her allegations of race discrimination was on October 22, 2008, when she sent a DLA Piper representative an e-mail alleging that she had not been considered for the position as Falby's legal secretary at least in part on account of her race. The only allegation of retaliation related to this conduct (as opposed to retaliation related to Sisco's complaints of sexual harassment) mentioned in the complaint is Sisco's subsequent termination by DLA Piper. The complaint does not allege that Falby was personally responsible for the decision to terminate Sisco; the only adverse action the complaint attributes to Falby personally is his alleged participation in a scheme to deny Sisco a promotion to the position of serving as Falby's legal secretary. Accordingly, the complaint does not allege any causal connection between Sisco's allegations of race discrimination and Falby's alleged adverse actions, and thus the allegations in the complaint do not give rise to a plausible Chapter 151B retaliation claim against Falby individually.

### J. Claims of Aiding and Abetting Race Discrimination and Retaliation (Related to Race Discrimination) under Chapter 151B (Sixth Cause of Action)

Again, claims under Chapter 151B are "derivative" of underlying discrimination claims, so there can be no liability for aiding and abetting discrimination absent a meritorious underlying claim of discrimination. Abramian, 432 Mass. at 122. In addition, in order to prevail on a claim for aiding and abetting under Chapter 151B, a complainant must demonstrate (1) a "wholly individual and distinct wrong" that "was committed by the proposed or named individual respondent(s)," which

"must be separate and distinct from the claim in main," and (2) that the "aider or abetter shared an intent to discriminate not unlike that of the alleged principal offender, and that the aider or abetter knew of his or her supporting role in an enterprise designed to deprive an individual of a right guaranteed him or her under G.L. c. 151B." <u>Harmon</u>, 19 Mass. Discrim. L. Rep. at 158.

### 1. Claim against Falby for Aiding and Abetting Race Discrimination

The complaint only alleges one "wholly individual and distinct wrong" against Falby, which, as discussed, is his participation in a scheme to deny Sisco a promotion. As noted above, that allegation is sufficient to permit a plausible Chapter 151B race discrimination claim against Falby. But the allegations against Falby and DLA Piper also permit a different set of plausible inferences - that, in the context of the decisionmaking process that led to Sisco being denied an opportunity to apply for the position of Falby's legal secretary, Falby's conduct in and of itself did not rise to the level of race discrimination (because, for example, Falby lacked sufficient personal control over the hiring process), that DLA Piper's distinct and separate conduct did, and that Falby's "wholly individual and distinct wrong" aided and abetted the discriminatory conduct by DLA Piper that forms Sisco's "claim in main." At this preliminary stage of the litigation, the allegation against Falby in Sisco'c complaint is sufficient to give rise to a plausible Chapter 151B claim against Falby for aiding and abetting DLA Piper's alleged race discrimination.

### 2. Claim against Falby for Aiding and Abetting Retaliation (Related to Race Discrimination)

The only wrong leveled against Falby in the complaint allegedly occurred in June 2008, when Falby allegedly approached white candidates to serve as his legal secretary without notifying Sisco of the available position. For Sisco's aiding and abetting retaliation claim against Falby, the relevant "intent to discriminate . . . of the alleged principal offender" is DLA Piper's alleged intent

to retaliate against Sisco for her October 22, 2010 e-mail complaining about race discrimination and for her November 5, 2008 filing of an MCAD complaint. The complaint in this case can only give rise to a Chapter 151B aiding and abetting claim against Falby if he shared DLA Piper's intent to retaliate, and - given that Falby's actions predated the actions taken by Sisco that provoked DLA Piper's allegedly retaliatory intent - a factual inference along these lines is simply not plausible.

## VI. Conclusion

For the reasons discussed above, Defendants' motion to dismiss is GRANTED as to 1) the Title VII sexual harassment and hostile work environment claims against Uchill and Scannell, as set forth in the complaint's first cause of action, 2) the Chapter 151B retaliation claim against Falby, as set forth in the complaint's sixth cause of action, and 3) the Chapter 151B aiding and abetting

retaliation (related to race discrimination) claim against Falby, as set forth in the complaint's sixth cause of action, and is DENIED in all other respects.

**So ordered.**

/s/ Denise J. Casper

United States District Judge